# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 1, 2014

Lyle W. Cayce
Clerk

No. 12-41442

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

FERRELL DAMON SCOTT,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:11-CV-143

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Petitioner Ferrell Damon Scott appeals from the district court's denial of his 28 U.S.C. § 2255 motion seeking relief from his sentence. We AFFIRM.

## FACTS AND PROCEDURAL HISTORY

An indictment charged Ferrell Damon Scott, federal prisoner # 27797-177, with one count of conspiring to possess with intent to distribute in excess of 1,000 kilograms of marijuana and three counts of possessing in excess of 100 kilograms of marijuana. After a four-day jury trial with co-defendant Artis

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-41442

Miller, the jury found Scott guilty on all counts. Scott was sentenced to life imprisonment. This court affirmed the convictions and sentences of both defendants. *United States v. Miller*, 384 F. App'x 419 (5th Cir. 2010).

After his conviction was affirmed on appeal, Scott filed in the district court a *pro se* request for documents. He claimed that his counsel informed him of possible juror misconduct prior to his sentencing. He sought court documentation regarding an interview he believed the district court had conducted in chambers nearly eight months after the jury's verdict. The district court denied Scott's request in March 2011. Two weeks later, Scott filed a *pro se* motion seeking to unseal court records regarding the identity of the relevant juror and seeking information on the juror-misconduct hearing. He asserted that his counsel had informed him that the district court had conducted a post-trial investigation regarding a romantic relationship between a juror, "Jane Doe," and the Assistant United States Attorney ("AUSA") who prosecuted Scott. Scott believed a conference occurred in chambers on February 11, 2009, and that the juror was interviewed by the court on February 17, 2009. The jury trial had ended on July 29, 2008.

In an order denying the motion, the district court explained that it had learned "long after the conclusion of Scott's trial" that a juror in Scott's case contacted one of the AUSAs involved in the prosecution. When the AUSA discovered that she was a former juror, he ceased contact and notified the district court. The district court determined that because the contact involved allegations of juror misconduct, as opposed to juror tampering, an *ex parte* hearing was appropriate, relying on *United States v. Sylvester*, 143 F.3d 923, 932-33 (5th Cir. 1998). The district court notified defense counsel and "held an *ex parte* hearing where the juror was interviewed." At the hearing, the court confirmed "that there had been no inappropriate contact between the prosecution and the juror prior to or during the trial."

No. 12-41442

Because the contact had occurred exclusively after the trial, the district court found it unnecessary to hold an evidentiary hearing.  The district court also determined that the only remaining concern was "if the juror was somehow improperly influenced by an attraction to the AUSA that developed during the trial."  The district court characterized this as an "internal matter" that it could not explore in light of Rule 606(b) of the Federal Rules of Evidence.

Scott then filed this Section 2255 motion.  Scott contended that his counsel was ineffective for failing to develop and present evidence that the juror must have been untruthful during *voir dire* by concealing an attraction to the AUSA.  He argued that the trial court was required to hold a post-trial evidentiary hearing when reasonable grounds for an investigation exist.  He further claimed that counsel was ineffective for failing to develop a record regarding this issue.  Scott also contended that it was improper for the district court to hold a hearing without notice and without having the proceedings transcribed.  Scott requested that counsel be appointed.  Scott provided various exhibits with his motion, including a declaration in which he reported the information that his attorney had provided regarding this issue.

The district court did not hold an evidentiary hearing.  In a lengthy order, the district court reiterated its finding that the contact between the juror and the AUSA was post-trial only.  The district court found that if the juror became attracted to the AUSA, that "developed during the four days of trial and after she was sworn and not during the relatively brief . . . jury selection hearing."  Consequently, Jane Doe would not have had reason during *voir dire* to identify a bias of this sort.

The district court concluded the "*ex parte* nature of the hearing" was proper: "Once the Court examined Jane Doe, it became readily apparent that there was no juror misconduct in this case."  Although it regretted that it did not have the hearing recorded, the district court stated that nothing in the

3

statute governing recording of court proceedings "required the Court to record the hearing because the hearing was held in chambers and the parties did not request that the hearing be recorded." *See* 28 U.S.C. § 753(b). "In short, the Court's failure to cause the hearing to be recorded was imprudent, but it was not illegal."

The district court addressed each of Scott's arguments and denied relief. It then, *sua sponte*, granted a Certificate of Appealability ("COA") on whether it was "now necessary to conduct a hearing in open court on the record to re-establish that the only contact between Jane Doe and the AUSA was post-trial." On appeal, Scott moved for an expansion of the COA grant. This court granted Scott a COA on these additional issues: did the district court err, in its original consideration of juror bias, by failing to conduct an evidentiary hearing and by not investigating the juror's feelings for the AUSA; whether the juror's bias in favor of the Government deprived him of a fair trial; whether counsel was ineffective for failing to develop and present the claim that he was denied the right to a fair trial; and whether the district court abused its discretion by denying his Section 2255 motion without holding an evidentiary hearing. We will consider the issue for which the district court granted a COA as part of our analysis of this final question posed in the expanded COA.

## DISCUSSION

Each of the issues covered by the COA relate to Scott's Sixth Amendment right to an impartial jury. "The Sixth Amendment requires that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003). The Sixth Amendment does not prescribe a specific test as to what constitutes impermissible juror bias. *Id.* Bias is largely context specific; it can be actual in some instances, but it also can be implied, sometimes from an undisclosed relationship between a party and a juror. *Id.* The remedy for implied bias is

a new trial. *Id.* at 400 n.44. Implied bias cases warranting a new trial occur only in "extreme situations." *Id.* at 395.

    I.    *Whether the district court should have conducted an evidentiary hearing regarding Jane Doe's in-trial thoughts or feelings toward the AUSA*

An evidentiary rule establishes the limited scope of permissible inquiry into the validity of a verdict or indictment:

> [D]uring an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

FED. R. EVID. 606(b)(1).

This rule permits juror testimony about whether "extraneous prejudicial information was improperly brought to the jury's attention," "an outside influence was improperly brought to bear on any juror," or "a mistake was made in entering the verdict on the verdict form." FED. R. EVID. 606(b)(2).

The district court determined that Rule 606(b) would not permit an inquiry into whether "the juror was somehow improperly influenced by an attraction to the AUSA that developed during the trial." It relied on a Supreme Court decision that Rule 606(b) prevented a post-verdict hearing as to whether jurors were intoxicated during the trial and jury deliberations. *Tanner v. United States*, 483 U.S. 107, 127 (1987). The *Tanner* Court distinguished between testimony related to influence caused by extrinsic factors, such as a bribe, which is admissible post-trial, and testimony about intrinsic factors, such as a juror's thought processes, which is inadmissible. *Id.* at 116-24. The Court determined intoxication was an intrinsic matter, and Rule 606(b) prevented the jurors from testifying about how their alleged intoxication affected their mental processes concerning the verdict. *Id.* at 127.

5

No. 12-41442

Scott relies on a slightly earlier Supreme Court opinion in which a juror had submitted a job application to the prosecutor's office before being selected as a juror in a case that office was prosecuting. *Smith v. Phillips*, 455 U.S. 209, 212 (1982). When the prosecutor questioned the jurors during *voir dire* about their biases, the juror did not disclose his application. *Id.* at 213. The defendant later discovered these facts and sought relief on the ground of jury misconduct. *Id.* at 212-14. The Supreme Court stated "that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215. Scott argues that the district court should have granted him a hearing in which he could have attempted to prove Jane Doe's partiality based on her alleged attraction to the AUSA.

In the present case, the district court concluded that Jane Doe's possible attraction to the AUSA is more analogous to *Tanner* than to *Phillips*. We agree. Jane Doe's feelings about the AUSA are intrinsic -- whatever they were, they developed during and within the trial. In *Smith*, the alleged bias arose from the juror's pre-trial contact with the district attorney's office, and the juror failed to disclose his job application during *voir dire*. *See Smith*, 455 U.S. at 213. There are no allegations here that Jane Doe had any knowledge of the AUSA before trial or made any contact with him until after trial.

Rule 606(b) prohibits testimony about the "mental processes concerning the verdict or indictment." Scott is trying to explore Jane Doe's mental processes. The district court correctly determined that a hearing was unnecessary.

II.     *Whether Scott's allegation that Jane Doe was attracted to the AUSA during trial constitutes implied bias*

6

Scott argues that the relationship that allegedly arose after trial is evidence that Jane Doe was impliedly biased during trial. We agree that Jane Doe's efforts to develop a relationship with the AUSA after trial may support that she had developed an attraction to him during trial.

Scott wishes us to apply the principle of implied bias, articulated in a Supreme Court concurrence but then adopted by this circuit:

> The Sixth Amendment requires that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. The Amendment prescribes no specific tests. The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law. Solis's claim focuses only on juror Tellez's alleged implied bias — not on any actual bias. In her concurrence in *Smith v. Phillips*, Justice O'Connor reasoned that while in the vast majority of cases a hearing to determine whether the juror was actually biased against the defendant is constitutionally sufficient, in certain instances a hearing may be inadequate for uncovering a juror's biases. In those extreme situations, a court may find the juror biased as a matter of law. Examples of such circumstances might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Solis*, 342 F.3d at 395 (quotation marks, citations, and footnotes omitted). The Fifth Circuit has held that implied bias is a valid construct and applied it to a situation in which a juror did not disclose during *voir dire* that his brother was a deputy in the sheriff's office that investigated the crime. *United States v. Fred Scott,* 854 F.2d 697, 698-700 (5th Cir. 1988).

We cannot equate an attraction that a juror developed during trial for one of the attorneys or parties, or a distaste for any of them, to situations of developed relationships such as those of family or professional connections. Jane Doe's feelings for an attorney, developed during trial, led to contact post-

trial. The feelings, though, may be little different in kind even if in degree to the rapport that lawyers consciously seek to develop with all, or at least some, jurors. There is no evidence here that the AUSA in this case was intending to bond subtly with any of the jurors, but if Scott's theory of implied bias is correct, it is doubtful that intent would matter.

We leave implied-bias principles for extreme situations of existing relationships that were undisclosed during *voir dire*, with the possibility of the field of implied bias expanding on the right facts. These are not such facts.

III.    *Whether Scott's attorney was ineffective by failing to pursue a juror bias claim after trial*

Scott contends that his counsel was ineffective for failing to develop a record regarding the juror bias issue. He further argues that appellate counsel rendered ineffective assistance by failing to raise this issue on direct appeal. To prevail on his claim that counsel rendered ineffective assistance, Scott must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Because Scott's juror-bias claim fails as a matter of law, Scott cannot demonstrate either that his counsel performed deficiently by failing to pursue it or that he was prejudiced by this failure. Scott's attorney was not ineffective by failing to pursue this claim.

IV.    *Whether the district court abused its discretion by denying Scott's Section 2255 motion without holding an evidentiary hearing*

The district court granted a COA on whether it was "necessary to conduct a hearing in open court on the record to re-establish that the only contact between Jane Doe and the AUSA was post-trial." This court's expansion of the COA is broad enough to encompass the district court's COA issue of whether an evidentiary hearing should have been held as part of the Section 2255 proceedings. We consider both issues together now.

No. 12-41442

A district court is to grant a "prompt hearing" on a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The district court's decision to deny an evidentiary hearing is reviewed for an abuse of discretion. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). Conclusory allegations are insufficient to require a hearing, and a defendant must produce independent indicia of the likely merit of his allegations. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

As we have already explained, Rule 606(b) prohibits testimony about "any juror's mental processes concerning the verdict or indictment," and juror bias cannot be implied from Jane Doe's alleged post-trial relationship with the AUSA. FED. R. EVID. 60(b). Rule 606(b) thus forecloses Scott's argument that the court should have allowed Jane Doe to testify about her rationale to support the guilty verdict. Insofar as Scott was seeking testimony regarding the nature and extent of the post-trial interaction between Jane Doe and the AUSA, that testimony would be irrelevant to any issue in this case.

The district court did not abuse its discretion by failing to hold an evidentiary hearing pursuant to Section 2255(b).

AFFIRMED.